**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

KEISHA HAMILTON,

                Plaintiff,

        v.                                1:23-CV-0577
                                              (TJM/CFH)
NEW YORK STATE THE OFFICE OF THE STATE
COMPTROLLER,

                Defendants.

---

**APPEARANCES:**

Keisha Hamilton
172 Hackett Blvd.
Albany, New York 12209
Plaintiff pro se

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION & ORDER

#### I.  In Forma Pauperis

        Plaintiff purported to commence this action on May 12, 2023, with the filing of a complaint and application for leave to proceed in forma pauperis ("IFP").  See Dkt. No. 1 ("Compl."), 2 (IFP).  After reviewing plaintiff's IFP application, the undersigned determines that plaintiff financially qualifies to proceed IFP.[1]  Thus, the Court must review the sufficiency of plaintiff's complaint pursuant to 28 U.S.C. § 1915.

#### II.  Legal Standard

---

[1]  Plaintiff also filed a pro se motion to obtain ECF login and password.  See Dkt. No. 4.  The Court will address this request in a separate order.

Section 1915(e)[2] of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that . . . the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).  It is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action.  Where the plaintiff is proceeding pro se, the court must consider the claims "liberally" and "interpret them 'to raise the strongest arguments that they suggest.'"  Cold Stone Creamery, Inc. v. Gorman, 361 F. App'x 282, 286 (2d Cir. 2010) (summary order) (quoting Brownell v. Krom, 446 F.3d 305, 310 (2d Cir. 2006)).  It is well-established that "[p]ro se submissions are reviewed with special solicitude, and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'"  Matheson v. Deutsche Bank Nat'l Tr. Co., 706 F. Appx. 24, 26 (2d Cir. 2017) (summary order) (quoting Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam)); Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008) (Where the plaintiff proceeds pro se, a court is "obliged to construe his pleadings liberally.") (quoting McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004)).  However, this approach "does not exempt a [pro se litigant] from compliance with relevant rules of procedural and substantive law."  Traguth v. Zuck, 710 F.2d 90, 95

---

[2] The language of section 1915 suggests an intent to limit availability of IFP status to prison inmates. See 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). However, courts have construed that section as making IFP status available to any litigant who can meet the governing financial criteria. See, e.g., Fridman v. City of N.Y., 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).  Accordingly, a financial assessment must be performed.  If determined to be financially qualified, the Court performs an initial review of the complaint pursuant to section 1915 for any plaintiff who seeks to proceed IFP, regardless of their incarceration status.

(2d Cir. 1983).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  Iqbal, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994).  The Court may not "invent factual allegations that [the plaintiff] has not pled."  Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010).

"The [Second Circuit]'s 'special solicitude' for pro se pleadings, Ruotolo v. IRS, 28 F.3d 6, 8 (2d Cir. 1994), has its limits, because pro se pleadings still must comply with Rule 8(a) of the Federal Rules of Civil Procedure."  Kastner v. Tri State Eye, No. 19-CV-10668 (CM), 2019 WL 6841952, at *2 (S.D.N.Y. Dec. 13, 2019).[3]  Pleading guidelines are set forth in the Federal Rules of Civil Procedure.  Specifically, Rule 8 provides that a pleading which sets forth a claim for relief shall contain, inter alia, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  "The purpose . . . is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable."  Flores v. Graphtex, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (internal quotation marks and citations omitted).  Rule 8 also requires the pleading to include:

> (1) a short and plain statement of the grounds for the court's jurisdiction . . . ;
>
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
>
> (3) a demand for the relief sought . . . .

---

[3]  The Court has provided plaintiff with copies of any unpublished cases cited herein.

FED. R. CIV. P. 8(a).  Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct."  Id. at 8(d).

Further, Rule 10 of the Federal Rules provides:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances.  A later pleading may refer by number to a paragraph in an earlier pleading.  If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b).  This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]"  Flores, 189 F.R.D. at 54 (internal quotation marks and citations omitted).

> "In reviewing a complaint . . . the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."

Ashcroft v. Iqbal, 556 U.S. 622, 678 (2009).  A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678 (citation omitted).

Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" does not

suffice." Id. (internal quotation marks and alterations omitted). Allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal.  Sheehy v. Brown, 335 F. App'x 102, 104 (2d Cir. 2009) (summary order).  Indeed, a complaint that fails to comply with these pleading requirements "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996).  As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative . . . to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). However, "[d]ismissal . . . is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citations omitted).


### III. **Complaint**

Plaintiff purports to bring her case pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. ("ADA")[4]; the Family and Medical Leave Act of 1993, 29 U.S.C. 2601 § et seq.; the New York State Human Rights Law "NYSHRL"), N.Y. Exec. Law § 290 et seq.; and New York State Paid Family Leave Law ("NYSPFLL"), N.Y. Workers' Comp. Law § 200 et seq.  Compl. at 1, 6.  Plaintiff contends that she was "discriminated against . . . on the basis of her disability and retaliated against . . . for

---

[4]  Although plaintiff does not specify, the undersigned interprets plaintiff's claims as being brought under Title I of the ADA, which applies to employment.

asserting her rights under the ADA and FMLA." Id.[5] She contends that defendant discriminated against her under the NYSHRL by denying her ADA reasonable accommodation request and creating a hostile work environment. See id. at 6. Finally, plaintiff argues that defendant also interfered with her rights under the NYSPFLL by "pressuring" her to "reverse" her leave and retaliating against her for seeking such leave. See id.

More specifically, plaintiff contends that she was employed by defendant Office of the State Comptroller ("OSC"), beginning in 2014. See Compl. at 2. In March 2021, plaintiff "suffered multiple ailments, including a cervical strain and tennis elbow resulting in two cortisone shots, as a direct result of working from home." Id. In September 2021, plaintiff was "hospitalized for pulmonary embolism." Id. Plaintiff's doctors "advised her to avoid potential exposure to COVID-19 as a preventive measure to avoid COVID pneumonia while her lungs recover[ed]." Id. On October 26, 2021, plaintiff sought a reasonable accommodation "under the ADA to continue working remotely to protect her health" and also applied for leave under the FMLA. See id.

On December 1, 2021, OSC denied plaintiff's reasonable accommodation request because "her essential job functions required her to be in the office at least 50% of the time." Compl. at 3. On December 6, 2021, plaintiff's supervisors, Mike Dutcher and Heather Marks, informed her "that Colleen Gardner, the Executive Deputy Comptroller of the Retirement System, had visited their office and questioned Plaintiff's commitment to her health, citing social media posts and accusing Plaintiff of not being genuinely concerned about her health." Id. Although plaintiff's supervisors "support[ed]

---

[5] Plaintiff does not identify under which title(s) she seeks to bring her ADA claims. However, it appears they would fall under Title I of the ADA.

her ability to work remotely," Ms. Gardner "pressured them into enforcing an in-office requirement for Plaintiff, creating a hostile work environment and forcing Plaintiff to take FMLA leave to protect her health."  Id.

Plaintiff provides that she "applied for and was granted FMLA leave" on December 14, 2021, which was effective immediately.  Compl. at 3.  Plaintiff stopped working that day.  See id.  In January 2022, "the entire OSC office transitioned to 100% telecommuting due to health concerns and rising COVID-19 cases"; however, "Plaintiff was not contacted and offered the opportunity to return to work remotely."  Id.  On March 1, 2022, plaintiff sought to schedule a meeting "with her supervisors, Colleen Gardner, and other relevant parties to discuss her safe return to work," but no meeting was scheduled despite plaintiff's "multiple attempts and conversations with OSC representatives."  Id.

Plaintiff alleges that, "[t]hroughout her employment," she suffered "numerous instances of hostility, bias, bullying, and retaliation by Colleen Gardner, which contributed to her emotional distress, anxiety, depression, PTSD, and executive dysfunction."  Compl. at 3-4.  Plaintiff provides that examples of such conduct include Ms. Gardner (1) "expressing reluctance to approve Plaintiff's traineeship application due to Plaintiff's refusal to perform tasks outside of her job description"; (2) "accusing Plaintiff about not being genuinely concerned about her health and questioning the legitimacy of her medical condition based on social media posts"; (3) "confronting Plaintiff's colleagues about tasks that should have been performed by Plaintiff while she was on leave, insinuating that Plaintiff was neglecting her responsibilities"; and (4) "scheduling a 'Staffing issue' meeting with Plaintiff's

supervisors and reprimanding them for allowing Plaintiff to charge her time in the manner she had, subsequently limiting their support and involvement in Plaintiff's situation."  Id. at 4.

Plaintiff contends that she suffered "significant damages due to OSC's discriminatory practices and retaliation, including lost wages and benefits, emotional distress, anxiety, depression, PTSD, executive dysfunction, and damage to her professional reputation."  Compl. at 4.  Plaintiff provides her notice of right to sue, dated February 13, 2023.  See Dkt. No. 1-1.[6]

Plaintiff argues that defendant OSC violated the ADA by "discriminat[ing] against Plaintiff on the basis of her disability by denying her reasonable accommodation request and creating a hostile work environment in violation of the ADA."  Compl. at 5.  Further, plaintiff argues that defendant OSC "interfered with Plaintiff's rights under the FMLA . . . by pressuring Plaintiff to reverse her FMLA leave and retaliating against her for exercising her FMLA rights."  Id.   Next, plaintiff argues that defendant OSC violated the New York State Human Rights Law by "discriminating against [her] on the basis of her disability by denying her reasonable accommodation request and creating a hostile work environment[.]"  Id. at 6.  Lastly, plaintiff contends that defendant OSC "interfered with Plaintiff's rights under the New York State Paid Family Leave Law "by pressuring Plaintiff to reverse her PFL leave and retaliating against her for exercising her PFL rights."  Id.

## IV.  **Discussion**

---

[6]   As plaintiff commenced this action within 90 days of this notice, her action is timely.

### A.  **NY Paid Family Leave Law**

Plaintiff's claims pursuant to the New York State Paid Family Leave Law, which would be before the Court pursuant to its supplemental jurisdiction, must be dismissed with prejudice.

> To the extent that Plaintiff is asserting any rights under the New York Paid Family Leave Benefits law, those rights cannot be pursued in this Court. See N.Y. Workers' Comp. L. § 221 ("In accordance with regulations adopted by the chair, . . . the employee may file with the chair a notice that his or her claim for disability or family leave benefits has not been paid...."); Williams v. Brooklyn Union Gas Co., 819 F. Supp. 214, 230-31 (E.D.N.Y. 1993) ("Where an employee has a remedy against his employer in proceedings under the Workers' Compensation Law, that remedy is exclusive." (citation omitted)).

Khwaja v. Jobs to Move Am., No. 1:19-CV-07070 GBD/SDA, 2019 WL 9362542, at *10 (S.D.N.Y. Nov. 13, 2019), report and recommendation adopted, No. 19CIV7070 GBDSDA, 2020 WL 1922373 (S.D.N.Y. Apr. 21, 2020).[7]  A plaintiff cannot pursue remedies for retaliation or discrimination under the New York State Paid Family Leave Law by commencing an action in Federal court and must instead seek her remedies under the Workers' Compensation Law.  See id.  Accordingly, it is recommended that any claims plaintiff purports to bring pursuant to the New York State Paid Family Leave Law be dismissed with prejudice.

### B.  **Sovereign Immunity**

Plaintiff has named OSC as the sole defendant.  Plaintiff's claims against OSC under the FMLA, ADA, and NYSHRL are barred by sovereign immunity under the Eleventh Amendment.

---

[7]  The Court has provided plaintiff with copies of all unpublished cases cited within this Report-Recommendation & Order.

> "[S]upreme Court and Second Circuit precedent make clear that Congress has not abrogated state sovereign immunity by enacting the 'self-care' provision of the FMLA, Title I of the ADA, or Section 1983. See Coleman, 566 U.S. at 37, 132 S.Ct. 1327 ("Standing alone, the self-care provision [of the FMLA] is not a valid abrogation of the States' immunity from suit."); Bd. of Trs. of the Univ. of Ala. v. Garrett, 531 U.S. 356, 374, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001) (holding that Congress did not abrogate the states' sovereign immunity against employment discrimination claims arising under Title I of the ADA). Neither has New York State waived its Eleventh Amendment immunity and consented to suit in federal court under the NYSHRL. See Quadir v. N.Y. State Dep't of Labor, 39 F. Supp. 3d 528, 537-38 (S.D.N.Y. 2014).

De Figueroa v. New York, 403 F. Supp. 3d 133, 151 (E.D.N.Y. 2019); see Smith v. State Univ. of New York, No. 1:00-CV-1454 (FJS/RFT), 2003 WL 1937208, at *4 (N.D.N.Y. Apr. 23, 2003) (quoting Smith v. State University of New York, Bd. of Trustees of Univ. of Ala. v. Garrett, 531 U.S. 356 (2001))(noting that the Supreme Court of the United States "held that 'Congress did not validly abrogate the States' sovereign immunity from suit by private individuals for money damages under Title I' of the ADA.").

"[A] plaintiff may sue a state official acting in his official capacity— notwithstanding the Eleventh Amendment—for prospective, injunctive relief from violations of federal law." State Emps. Bargaining Agent Coal. v. Rowland, 494 F.3d 71, 95 (2d Cir. 2007) (internal quotations and citation omitted); Penird v. Better, 5:19-CV-1146 (MAD/TWD), 2012 WL 3077853, at *5 (N.D.N.Y. July 21, 2021) ("The Eleventh Amendment, however, does not preclude suits against state officers in their official capacity for prospective injunctive relief to prevent a continuing violation of federal law."). In her complaint, along with seeking compensatory, punitive, and declaratory relief, plaintiff does appear to seek prospective, injunctive relief.  See Compl. at 6.  In the event plaintiff does wish to seek such relief in any future amended pleading, her amended complaint must name an individual officer or officers in their official capacities.

See Santiago v. N.Y. State Dep't of Corr. Servs., 945 F.2d 25, 32 (2d Cir. 1991) ("Ex parte Young requires that 'a plaintiff seeking prospective relief from the state must name as defendant a state official rather than the state or a state agency directly.'")).

Accordingly, it is recommended that all claims against OSC for violations of the ADA, FMLA, and NYSHRL be dismissed with prejudice as barred by the Eleventh Amendment.  However, it is recommended that the dismissal be without prejudice to plaintiff seeking to amend to name state officials acting in their official capacities for prospective, injunctive relief only.  "Where a plaintiff alleges only discrete acts of past discrimination and retaliation, merely characterizing the request for relief as prospective will not suffice to invoke the Ex parte Young doctrine." De Figueroa v. New York, 403 F. Supp. 3d 133, 151-52 (E.D.N.Y. 2019) (internal citation and quotation marks omitted).

## C. **Proper Defendant(s)**

### 1. **FMLA**

Under the FMLA, "'an individual may be held liable . . . only if she is an 'employer,' which is defined as encompassing 'any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer.'" Milner-Koonce v. Albany City Sch. Dist., No. 1:21-CV-1271 (LEK/CFH), 2023 WL 3748831, at *4 (N.D.N.Y. June 1, 2023) (quoting Graziadio, 817 F.3d at 422) (additional citation omitted).  "The Second Circuit has framed this inquiry as 'whether the alleged employer possessed the power to control the worker[ ] in question, with an eye to the 'economic reality' presented by the facts of each case.'"  Id. at *4 (quoting Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999) (internal citations omitted)). Explained further,

Courts consider "a nonexclusive and overlapping set of factors," Zheng v. Liberty Apparel Co., 355 F.3d 61, 75 (2d Cir. 2003), intended to "encompass[ ] the totality of circumstances," Herman, 172 F.3d at 139. These factors include: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Id. (quoting Carter v. Dutchess Cmty. Coll., 735 F.2d 8, 12 (2d Cir. 1984)). "No one of the four factors standing alone is dispositive, and any relevant evidence may be examined so as to avoid having the test confined to a narrow legalistic definition." Graziadio, 817 F.3d at 422-23 (cleaned up). "In the FMLA context, courts assessing the economic reality of an employment relationship have construed this test as asking essentially whether the putative employer 'controlled in whole or in part plaintiff's rights under the FMLA.'" Id. at 423 (citation omitted).

Milner-Koonce, 2023 WL 3748831, at *4.  Accordingly, to the extent plaintiff wishes to seek only prospective, injunctive relief under the FMLA, it is recommended that plaintiff be given an opportunity to amend to name a proper "employer" as defined by the FMLA.

## 2.  **ADA**

There is no individual liability under the ADA.  Thus, plaintiff would not be able to name a supervisor or other individual as a defendant to the extent she seeks monetary relief.  See, e.g., Lauria v. Donahue, 438 F. Supp. 2d 131, 139-40 (E.D.N.Y. 2006); see also Spiegel v. Schulmann, 604 F.3d 72, 79 (2d Cir. 2010) (holding that the retaliation provision of the ADA does not provide for individual liability); Arcuri v. Schoch, No. 6:15-CV-0798 (DNH/TWD), 2015 WL 5652336, at *5 (N.D.N.Y. Sept. 24, 2015) ("Although the Second Circuit has yet to explicitly address whether there is individual liability under Title I of the ADA, many district courts in this circuit, as well as other circuit courts, have held that individual defendants may not be held personally liable for alleged violations of Title I of the ADA.").  However, plaintiff may seek to proceed against an individual defendant or defendants in their official capacity if she seeks only prospective, injunctive

relief for continuing violations of the ADA, to the extent this may be applicable.  See Penird, 2012 WL 3077853, at *5.

### 3.  **NYSHRL**

The Court of Appeals, State of New York, has recently made clear that the "NYSHRL 'does not render employees liable as individual employers.'" Bonaffini v. City Univ. of New York, No. 20-CV-5118 (BMC), 2021 WL 2895688, at *2 (quoting Doe v. Bloomberg, L.P., 36 N.Y.3d 450, 457, 143 N.Y.S.3d 286, 291 (N.Y. 2021)).  However, it does not appear to be settled law whether sovereign immunity bars a suit against individual officers under the NYSHRL for claims that they aided, abetted, incited, compelled, or coerced the commission of a discriminatory act.  See N.Y. Exec. Law § 296(6).

Indeed, courts in this Circuit are split on that very question.  See Bonaffini, 2021 WL 2895688, at *3 (E.D.N.Y. July 9, 2021) (citing Feingold, 366 F.3d at 149, 158) (noting that courts are split on this question and that, "[a]lthough the Second Circuit has not squarely addressed the issue, it has, in a single opinion, held that an employer enjoyed sovereign immunity and gone on to analyze an employee's individual liability under the NYSHRL and NYCHRL."); but see Trostle v. State of New York, No. 1:13-CV-0709, 2016 WL 1175215, at *9 (N.D.N.Y. Mar. 24, 2016) (determining that NYSHRL claims against individual officers in their official capacities was barred by sovereign immunity because sovereign immunity extended to individual officers in their official capacities for money damages as arms of the state.); Smith, 2003 WL 1937208, at n.7 (quoting Dube v. State Univ. of New York, 900 F.2d 587, 595 (2d Cir. 1990) ("Ex parte Young does not apply to Plaintiffs' New York Human Rights Law claims *to the extent*

*that they seek prospective* relief against the individual Defendants in their official

capacities because the claims for prospective relief are based upon violations of state

law.") (emphasis added)).

Given that at least some courts in this Circuit that have recently addressed the

issue have held "that the NYSHRL . . . do[es] not bar plaintiff from suing [a state

employee] for aiding and abetting the alleged violations," <u>Bonaffini</u>, 2021 WL 2895688,

at *3, the undersigned concludes that, at this early stage, plaintiff should be permitted to

amend should she wish to name individual defendants in their official capacities under

the NYSHRL for both prospective, injunctive relief and monetary damages under an

aider or abettor theory of liability.[8]

Plaintiff has not currently named any such individual or claim, but in dismissing

plaintiff's NYSHRL claims against OSC, it is recommended that the dismissal be without

prejudice to plaintiff amending her complaint to name such a defendant or defendants.

## C.  Qualifying Disability under ADA & NYSHRL

For a plaintiff

> To succeed on . . . ADA and [NYS]HRL claims, Plaintiff must establish that
> [she/]he: (1) suffered from, or was regarded as suffering from[,] a disability
> within the meaning of the ADA and/or the [NYS]HRL; (2) was qualified to
> perform the essential functions of the job, with or without reasonable
> accommodation; and (3) suffered an adverse employment action.

<u>O'Donnell v. King B 100, LLC</u>, No. 1:14-CV-1345, 2016 WL 7742779, at *9 (N.D.N.Y.

May 3, 2016) (citing <u>Capobianco v. City of N.Y.</u>, 422 F.3d 47, 56 (2d Cir. 2005) (ADA

claim); <u>Kaufman v. Columbia Memorial Hospital</u>, 2 F. Supp.3d 265, 277 (N.D.N.Y. 2014)

(applying same standard to HRL claim)).  Any adverse employment action must be

---

[8]  Such a finding is subject to plaintiff's ability to demonstrate a qualifying disability or perceived disability
under the NYSHRL, as explained below.

because of the disability, and, under the NYSHRL, this could include a perceived

disability.  See Kinnerary v. City of N.Y., 601 F.3d 151, 155-56 (2d Cir. 2000).  Further

> The ADA defines "disability" as: (a) a physical or mental impairment that
> substantially limits one or more of the major life activities of such
> individual; (b) a record of such impairment; or (c) being regarded as
> having such impairment. See 42 U.S.C.§ 12102(1). Under the HRL,
> "disability" is defined as: (a) a physical, mental or medical impairment
> resulting from anatomical, physiological, genetic or neurological conditions
> which prevents the exercise of a normal bodily function; (b) a record of
> such impairment; or (c) a condition regarded as such an impairment. See
> Executive Law § 292(21).

O'Donnell, 2016 WL 7742779, at *9.   "[M]ajor life activities include, but are not limited

to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping,

walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating,

thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

Plaintiff fails to demonstrate how her claimed disability/disabilities –tennis elbow,

cervical strain, and pulmonary embolism – amount to "qualifying" disabilities as defined

by the ADA and NYSHRL.  Conditions that are "minor" or "transitory" or temporary

conditions without associated long-term consequences are not entitled to protection

under the ADA or NYSHRL. O'Donnell, 2016 WL 7742779, at *9 (N.D.N.Y. May 3,

2016).  "Such temporary or 'transitory' impairments are defined 'as lasting six months or

less.'" Milner-Koonce, 2022 WL 2339443, at *5 (citing Crosby v. McDonald's of

Guilderland, LLC, No. 1:17-CV-1160, 2018 WL 2077884, at *3 (N.D.N.Y. May 2, 2018)

(quoting 42 U.S.C. § 12102(3)(B)).

The only restriction plaintiff associates with her pulmonary embolism is that her

doctor advised her to work from home until her lungs could have the opportunity to heal.

See Compl. at 2.  However, plaintiff does not indicate how long she was advised the

"healing" process would take nor does she contend she had any lasting impacts. Similarly, plaintiff does not explain how her tennis elbow and cervical strain associated with her working from home are anything other than temporary or transitory conditions. "[I]t is well settled that temporary impairments with little or no long-term permanent impact are not disabilities under the ADA" or the NYSHRL. Id. (citing Colwell v. Suffolk Cnty. Police Dept., 158 F.3d 635, 646 (2d Cir. 1998)) (superseded on other grounds); Guary v. Upstate Nat'l Bank, 618 F. Supp.2d 272, 275 (W.D.N.Y. 2009)).  This is true even if the temporary or transitory condition requires an extended leave of absence from work.  See Harris v. Franziska Racker Centers, Inc., 340 F. Supp. 2d 225, 235 (N.D.N.Y. 2004) (citation omitted).

The undersigned does note, however, that, in a situation where a plaintiff alleges that he or she is discharged because of her disability, even a temporary condition may be entitled to protection under the ADA if the employer has a good faith but mistaken belief that the impairment is disabling.  Harris, 340 F. Supp. 2d at 235 (citation omitted). Plaintiff has not provided the Court with enough information regarding termination, if any, or her employer's beliefs with respect to the nature of her impairments at the time of any alleged adverse employment action.

Accordingly, it is recommended that plaintiff's retaliation, discrimination, and hostile work environment claims pursuant to the ADA and NYSHRL be dismissed without prejudice and with opportunity to amend to: (1) name a proper defendant or defendants who meet the definition of a qualifying "employer" under the ADA and NYSHRL, (2) explain if she has a qualifying disability or disabilities as defined by the ADA and NYSHRL (or perceived disability under the NYSHRL), and (3) describe

adverse employment action(s) that occurred because of her disability or perceived disability.

### D. **FMLA**

#### 1. **Serious Health Condition**

To proceed on her retaliation and interference claims under the FMLA, Plaintiff must demonstrate that she had a "serious health condition" as defined by the FMLA.

> Pursuant to regulations issued by the Department of Labor, a serious health condition involving continuing treatment by a health care provider includes a
> [a] period of incapacity of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves
> (1) Treatment two or more times, within 30 days of the first day of incapacity, unless extenuating circumstances exist, by a health care provider, by a nurse under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider; or
> (2) Treatment by a health care provider on at least one occasion, which results in a regimen of continuing treatment under the supervision of the health care provider.
> (3) The requirement in paragraphs (a)(1) and (2) of this section for treatment by a health care provider means an in-person visit to a health care provider. The first (or only) in-person treatment visit must take place within seven days of the first day of incapacity.
>  (4) Whether additional treatment visits or a regimen of continuing treatment is necessary within the 30–day period shall be determined by the health care provider.

Barber v. Von Roll U.S.A., Inc., No. 1:14-CV-907 (MAD/TWD), 2015 WL 5023624, at *7-8 (N.D.N.Y. Aug. 25, 2015) (quoting 29 C.F.R. § 825.115(a)(1)-(4)).  Under the FMLA, a "serious health condition" includes any "illness, injury, impairment, or physical or mental condition that involves . . . continuing treatment by a health care provider." 29 U.S.C. §

2611(11)(B). Arizmendi v. Rich Prod. Corp., No. 22-1971, 2023 WL 4246106, at *1 (2d Cir. June 29, 2023) (emphasis omitted).

Plaintiff has merely stated that she suffered a pulmonary embolism, that her doctor recommended she work from home to allow her lungs time to heal, and that she suffered cervical strain and tennis elbow as a consequence of her working from home. See Compl. at 2. Thus, plaintiff has not pleaded sufficient information for the Court to determine whether she has demonstrated that she suffered from a serious health condition as defined by the FMLA.  Accordingly, it is recommended that plaintiff's FMLA claims be dismissed without prejudice and with opportunity to amend, and that any amended complaint plaintiff files must provide additional factual support such that the Court may assess whether plaintiff suffered from a serious health condition or conditions as defined by the FMLA.

### 2.  **Interference & Retaliation**

As this Court has recently set forth:

> Section 2615(a)(1) of the FMLA states that '[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.'" Potenza v. City of N.Y., 365 F.3d 165, 167 (2d Cir. 2004) (quoting 29 U.S.C. § 2615(a)(1)). The regulations promulgated pursuant to the FMLA explain that (1) "'[i]nterfering' with the exercise of an employee's rights would include, for example, not only refusing to authorize FMLA leave, but discouraging an employee from using such leave," and that (2) "[a]n employer is prohibited from discriminating against employees or prospective employees who have used FMLA leave." Id. (quoting 29 C.F.R. § 825.220(b), (c)) (alterations in original).

> Accordingly, "FMLA claims [often] come in . . . two varieties: interference and retaliation." Woods v. START Treatment & Recovery Ctrs., Inc., 864 F.3d 158, 166 (2d Cir. 2017). To state a claim of interference with one's FMLA rights, a plaintiff must plausibly allege:

> 1) that she is an eligible employee under the FMLA; 2) that the defendant is an employer as defined by the FMLA; 3) that she was entitled to take leave under the FMLA; 4) that she gave notice to the defendant of her intention to take leave; and 5) that she was denied benefits to which she was entitled under the FMLA

Graziadio v. Culinary Inst. of Am., 817 F.3d 415, 424 (2d Cir. 2016). To state a claim of retaliation for exercising one's rights under the FMLA, a plaintiff must plausibly allege that: "1) he exercised rights protected under the FMLA; 2) he was qualified for his position; 3) he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." Potenza, 365 F.3d at 168.

Milner-Koonce, 2023 WL 3748831, at *4.

### a. Interference

As noted above, plaintiff has not named a proper defendant under the FMLA. However, to the extent plaintiff may amend to cure these defects or demonstrate the existence of a serious health condition, the undersigned assesses the allegations in plaintiff's complaint to determine whether, as pleaded, they are sufficient to state a claim if plaintiff had plaintiff named the proper defendant and demonstrated the existence of a serious health condition.

After reviewing these claims, the undersigned determines that plaintiff has not alleged sufficient facts to support an FMLA interference claim.  As noted above, section 2615(a)(1) of the FLMA provides that it "shall be unlawful for any employer to interfere with, restrain, or deny the exercise or attempt to exercise any right provided under this subchapter."  "Interference claims involve an employee being prevented from exercising her rights under the FMLA by her employer." Graziadio, 817 F.3d at 424.

Plaintiff has not demonstrated that she was denied a benefit to which she was entitled under the FMLA.  Indeed, she has stated that she requested <u>and</u> <u>received</u> leave.  Although plaintiff notes that certain supervisors were "pressured" to "reverse" her FMLA leave, it is not clear whether her leave was actually "reversed" or revoked.  <u>See</u> <u>generally</u> Compl.

Accordingly, in addition to recommending dismissal of the FMLA claim for sovereign immunity and failure to name a proper defendant or demonstrate a qualifying disability, it is recommended that plaintiff's FMLA interference claim be dismissed without prejudice for failure to set forth a prima facie interference claim.  However, the undersigned recommends providing plaintiff an opportunity to amend to set forth whether, and how, she was denied the benefits to which she was entitled under the FMLA.  <u>See</u> <u>Graziadio</u>, 817 F.3d at 424.

### b. **Retaliation**

The FMLA "protects an employee from discharge or demotion by an employer if that action is motivated by the employee's taking of leave pursuant to the FMLA."  <u>Bishop v. New Process Gear, Inc.</u>, No. 5:06-CV-0821 (GTS/GHL), 2009 WL 3928679, at *2 n.6 (N.D.N.Y. Nov. 18, 2009) (internal citations omitted). The undersigned observes that the complaint also does not have sufficient facts as to plaintiff's employment status with OSC.  Plaintiff states only that she was on FMLA leave, called to discuss her return to work when she learned that the office was going fully remote in January 2022, but did not hear back.  <u>See</u> Compl. at 3,  Although the Court infers that she was discharged, the complaint does not explicitly state as such.  If it is the case that plaintiff was not reinstated after being granted FMLA leave and

contends that the failure to reinstate was because she sought to take FMLA leave, this may state a claim for retaliation under the FMLA.  See generally Woods v. START Treatment & Recovery Centers, Inc., 864 F.3d 158, 167 (2d Cir. 2017) ("[F]MLA rights have two parts—the right to take leave and the right to reinstatement, so terminating an employee who has taken leave is itself an outright denial of FMLA rights.").

However, as with the FMLA interference claim, plaintiff would need to provide the Court with more information.  See, e.g., Lehtinen v. Town of Greenport, No. 1:12-CV-393 (MAD/CFH), 2014 WL 3477037, at *7 (N.D.N.Y. July 11, 2014) (quoting 29 C.F.R. § 825.216(c) and citing Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 161-62 (2d Cir.1999) (noting that the right to be restored to the employee's position or its equivalent following an FMLA leave period "is not absolute" and if the employee is unable to perform an essential function of the position because of a physical or mental condition, including the continuation of a serious health condition . . . the employee has no right to restoration to another position under the FMLA.").  If plaintiff does intend to allege that she was discharged or not reinstated, in addition to curing all of the other defects noted above, any amended complaint must provide sufficient facts to demonstrate that her termination occurred under circumstances giving rise to an inference of discrimination and inform the Court when she was terminated/failed to be reinstated.  See, e.g., Lehtinen, 2014 WL 3477037 at *10 (noting that for an FMLA retaliation claim, a plaintiff can establish a causal nexus by demonstrating that the protected activity was closely followed by the retaliatory conduct).

The Court also assesses what appears to be plaintiff's other claims of adverse employment action to determine whether it could qualify as FMLA retaliation.

Plaintiff makes several claims wherein she says she faced "hostility, bias, bullying, and retaliation by Colleen Gardner," Compl. at 3-4; however, even if plaintiff had properly named Ms. Gardner as a defendant – which she has not at this stage – these claims do not suffice to support an FMLA retaliation claim because plaintiff has not alleged that this conduct was done in retaliation for plaintiff exercising her FMLA rights.  See Compl. at 3-4.

Plaintiff alleges that, "[t]hroughout her employment," she suffered "numerous instances of hostility, bias, bullying, and retaliation by Colleen Gardner, which contributed to her emotional distress, anxiety, depression, PTSD, and executive dysfunction."  Compl. at 3-4.  Plaintiff provides that examples of such conduct include Ms. Gardner (1) "expressing reluctance to approve Plaintiff's traineeship application due to Plaintiff's refusal to perform tasks outside of her job description"; (2) "accusing Plaintiff about not being genuinely concerned about her health and questioning the legitimacy of her medical condition based on social media posts"; (3) "confronting Plaintiff's colleagues about tasks that should have been performed by Plaintiff while she was on leave, insinuating that Plaintiff was neglecting her responsibilities"; and (4) "scheduling a 'Staffing issue' meeting with Plaintiff's supervisors and reprimanding them for allowing Plaintiff to charge her time in the manner she had, subsequently limiting their support and involvement in Plaintiff's situation."  Id. at 4.  To the extent plaintiff can demonstrate that (1) Ms. Gardner is an employer as defined by the FMLA, and (2) that this conduct amounts to "adverse employment action" as defined by the FMLA, plaintiff must still demonstrate that these actions "occurred under circumstances giving rise to an inference of retaliatory intent."  Potenza v. City of New York, 365 F.3d

165, 168 (2d Cir. 2004).  Based on the complaint as it is currently plead, it is not clear that these actions occurred because plaintiff sought FMLA leave.

Accordingly, in addition to recommending dismissal of the FMLA claim for sovereign immunity, failure to name a proper defendant or prove a qualifying disability, it is recommended that plaintiff's FMLA retaliation claim be dismissed without prejudice for failure to set forth a prima facie FMLA retaliation claim.  If plaintiff is to amend, she also provide sufficient facts to demonstrate that she suffered adverse employment action and that the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent.

### E.  **ADA**

To the extent plaintiff may amend her complaint to demonstrate a qualifying disability, the undersigned assesses whether her ADA claims could survive initial review as currently pleaded. plaintiff appears to wish to contend that (1) she was improperly denied a reasonable accommodation, and (2) she was subjected to a hostile working environment in violation of the ADA.  See Compl. at 5.  Although plaintiff cannot proceed against OSC under the ADA due to sovereign immunity and cannot proceed against any individual defendants for monetary damages based on the absence of individual liability, the ADA does permit claims against individuals for prospective injunctive relief.  Plaintiff does indicate that she seeks injunctive relief, though she does not provide details as to that relief.  However, because the undersigned recommends opportunity to amend, the undersigned will assess the validity of her ADA claims to the

extent she may amend to name individual defendants in their official capacities and seek prospective injunctive relief only.

### 1. **Reasonable Accommodation**

Plaintiff appears to argue that she was wrongly denied a reasonable accommodation.  To wit, plaintiff alleges that on October 26, 2021, she sought a reasonable accommodation – "to continue working remotely to protect [her] health"– which was denied on December 1, 2021, because "her essential job functions required her to be in the office at least 50% of the time."  Compl. at 3.  As indicated above, the Court does not have sufficient information before it to determine whether plaintiff's claimed conditions – suffering pulmonary embolism, tennis elbow, and cervical strain – qualify as disabilities as defined under the ADA.  However, even if plaintiff is able to demonstrate this through an amended pleading, further information will also be needed.

> To establish a prima facie case for disability discrimination due to a failure to make reasonable accommodations, the employee must show that: (1) she is a person with a disability within the meaning of the ADA; (2) her employer was on notice of her disability; (3) she could perform the essential functions of her job either with or without reasonable accommodations; and (4) the employer refused to provide reasonable accommodations.

Smith v. NYS Off. of Temp. & Disability Assistance, 535 F. Supp. 3d 90, 95 (N.D.N.Y. 2021) (citing Noll v. IBM, 787 F.3d 89, 94 (2d Cir. 2015)).

To set forth a prima facie claim of a denial of a reasonable accommodation, plaintiff must show that her requested reasonable accommodation is "available."  Do to so, "[P]laintiff must make a facial showing that [s]he is able to perform the job's essential functions, alone or with a suggested accommodation."  Shannon v. Verizon New York, Inc., 519 F. Supp. 2d 304, 308 (N.D.N.Y. 2007).  Given that plaintiff indicated that OSC

denied her reasonable accommodation request because "her essential job functions required her to be in the office at least 50% of the time[,]"  Compl. at 3, it is not clear whether plaintiff can demonstrate that she would have been able to perform her essential job functions with or without the work from home accommodation she requested.[9]  Accordingly, in addition to recommending dismissal of her ADA claim for failure to name a proper defendant or demonstrate a qualifying medical condition, it is recommended that plaintiff's ADA reasonable accommodation claim be dismissed without prejudice and with opportunity to amend to the extent plaintiff seeks to raise such claims against individual defendants in their official capacities for prospective, injunctive relief only.  Accordingly, should plaintiff amend her complaint, in addition to curing the defects noted above, she must clarify and explain whether she could "perform the essential functions of her job either with or without reasonable accommodation."  Shannon, 519 F. Supp. 2d at 308.


## 2. **Hostile Work Environment – ADA & NYSHRL**[10]

Plaintiff further contends that she suffered a hostile work environment in violation of the ADA and NYSHRL. See Santana v. Mount Vernon City Sch. Dist./Bd. of Educ., No. 20-CV-3212, 2021 WL 4523770, at *16 (S.D.N.Y. Sept. 30, 2021) ("NYSHRL hostile

---

[9]  The undersigned further notes, in addition to contending that she experienced pulmonary embolism and that she needed to work from home to avoid COVID-19 exposure while her lungs healed, plaintiff also contended that she suffered tennis elbow and cervical strain as a result of working from home.   Thus, in contending that she requested a reasonable accommodation to work from home, it is unclear if she is arguing that the tennis elbow and cervical strain were part of the disability for which she needed a reasonable accommodation as it is unclear how working from home would accommodate disabilities that she alleges were caused by working from home.  Clarity on this point in any amended pleading would be needed.

[10] In the event plaintiff can amend her complaint to demonstrate a valid federal claim, the Court would proceed to review her state law NYSHRL claim pursuant to supplemental jurisdiction.

work environment claims are evaluated under the same standards as ADA . . .

discrimination claims.").

Although plaintiff must amend to cure the defects identified above,  with respect

to the name defendant, need to demonstrate qualifying disability, and type of relief

sought, in order to streamline the process of reviewing any amended complaint that

may be filed and with judicial efficiency in mind, the undersigned reviewss whether the

claims currently pleaded in plaintiff's complaint would suffice to set forth a hostile work

environment claim under the ADA or NYSHRL.

> To establish a prima facie case of hostile work environment, the plaintiff
> must show that she "1) is a member of a protected class; 2) that she
> suffered unwelcome harassment; 3) that she was harassed because of
> her membership in a protected class; and 4) that the harassment was
> sufficiently severe or pervasive to alter the conditions of employment and
> create an abusive work environment." Monterroso, 591 F.Supp.2d at 584
> (footnote omitted). The standard is a "'demanding one,'" and the alleged
> harassment must be sufficiently "'offensive, pervasive, and continuous
> enough' to create an abusive working environment." Id. at 584-85
> (footnote omitted). To determine whether conduct rises to such a level,
> "courts examine the case-specific circumstances in their totality and
> evaluate the severity, frequency, and degree of the abuse." Robins v.
> N.Y.C. Bd. of Educ., No. 07 Civ. 3599, 2010 WL 2507047, *11 (S.D.N.Y.
> June 21, 2010) (citing Harris v. Forklift Sys. Inc., 510 U.S. 17, 23, 114
> S.Ct. 367, 126 L.Ed.2d 295 (1993)) (other citation omitted). "The
> sufficiency of a hostile work environment claim is subject to both
> subjective and objective measurement: the plaintiff must demonstrate that
> she personally considered the environment hostile, and that the
> environment rose to some objective level of hostility." Leibovitz v. N.Y.C.
> Transit Auth., 252 F.3d 179, 188 (2d Cir. 2001) (citations omitted).

Guinup v. Petr-All Petroleum Corp., 786 F. Supp. 2d 501, 515 (N.D.N.Y. 2011).

Plaintiff states that her work environment was hostile because Ms. Gardner

pressured her supervisors into "enforcing an in-office requirement for Plaintiff, creating a

hostile work environment and forcing Plaintiff to take FMLA leave to protect her health."

Compl. at 3.  Plaintiff states that she suffered "numerous instances of hostility, bias,

bullying, and retaliation by Colleen Gardner."  Id. at 3-4.  As stated, the examples plaintiff provides are that Ms. Gardner (1) "express[ed] reluctance to approve Plaintiff's traineeship application due to Plaintiff's refusal to perform tasks outside of her job description"; (2) "accus[ed] Plaintiff about not being genuinely concerned about her health and questioning the legitimacy of her medical condition based on social media posts"; (3) "confront[ed] Plaintiff's colleagues about tasks that should have been performed by Plaintiff while she was on leave, insinuating that Plaintiff was neglecting her responsibilities"; and (4) "schedule[ed] a 'Staffing issue' meeting with Plaintiff's supervisors and reprimanding them for allowing Plaintiff to charge her time in the manner she had, subsequently limiting their support and involvement in Plaintiff's situation."  Id. at 4.

Assuming plaintiff amends and can demonstrate that she has a qualifying disability and names a proper defendant or defendants from which she seeks only prospective, injunctive relief, the facts alleged in the complaint are not sufficient to demonstrate hostile work environment in violation of the ADA or NYSHRL.  Plaintiff has not made clear that Ms. Gardner's conduct was motivated by plaintiff's disability or disabilities.  As this Court has before set forth,

> the incidents giving rise to a hostile work environment must also have "occur[ed] because of an employee's . . . protected characteristic." Rivera, 743 F.3d at 20 (quoting Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001)). As a result, this Court has recognized that "[i]n evaluating a hostile work environment claim, a court may not consider incidents unrelated to the plaintiff's protected characteristics." Guerra v. Murphy, No. 15-CV-1168, 2016 WL 7480405, at *7 (N.D.N.Y. Dec. 29, 2016) (Kahn, J.). But the Second Circuit has recently reiterated that "when the same individuals engage in some harassment that is explicitly discriminatory and some that is not, the entire course of conduct is relevant to a hostile work environment claim." Rasmy v. Marriott Int'l, Inc., 952 F.3d 379, 388 (2d Cir. 2020).

Buczakowski v. Crouse Health Hosp., Inc., No. 5:18-CV-0330 (LEK/ML), 2022 WL 356698, at *8 (N.D.N.Y. Feb. 7, 2022).  Accordingly, in addition to recommending dismissal for the reasons recommended above, it is recommended that her ADA claims, to the extent she may seek prospective injunctive relief against an individual defendant(s) in their official capacity, and NYSHRL hostile work environment claims be dismissed without prejudice and with leave to amend to cure the defects as identified herein.

## V.  **Conclusion**

**WHEREFORE**, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiff's In Forma Pauperis application, dkt. no. 2, is **GRANTED**, and it is

**RECOMMENDED**, that plaintiff's complaint, dkt. no. 1, be **DISMISSED** as follows:

(1) plaintiff's claims pursuant to the New York State Paid Family Leave Act be **DISMISSED WITH PREJUDICE**;

(2) plaintiff's claims against the New York State Office of the State Comptroller for violations of the ADA, FMLA, and NYSHRL be **DISMISSED WITH PREJUDICE**; but that such dismissal be without prejudice to plaintiff's ability to amend should she wish to add the following claims:[11]

---

[11]   The undersigned reiterates that in recommending plaintiff be granted leave to amend should she wish to add such claims, it makes no finding on whether such claims would survive initial review or, should the case reach it, dispositive motions.  Plaintiff is advised that if she amends her complaint, the amended complaint supersedes and replaces the original complaint in its entirety such that plaintiff may not incorporate by reference any portion of the original complaint.  Further, the amended complaint may not replead any claim or defendant dismissed by this Court with prejudice.

(a) prospective, injunctive relief against individual officer/officers in their official capacities under the ADA, FMLA, and NYSHRL;

(b) aiding and abetting under the NYSHRL against individual officer/officers in their official capacities for money damages and/or prospective injunctive relief; and it is further

**RECOMMENDED**, that plaintiff be prohibited from amending to add individual liability claims under the ADA for money damages or any claims for money damages under the FMLA; and it is further

**RECOMMENDED**, that if the District Judge adopts this Report-Recommendation & Order, plaintiff be given thirty (30) days from the filing date of the District Judge's Decision adopting the Report-Recommendation & Order to file an amended complaint; and it is

**ORDERED**, that the Clerk of the Court serve this Report-Recommendation & Order on plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has FOURTEEN (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  See Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1999)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).[12]

---

[12]  If you are proceeding pro se and are served with this Report-Recommendation & Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation & Order was mailed to you to serve and file objections.  See FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal

Dated: October 13, 2023
       Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

---

holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. See id. § 6(a)(1)(c).